Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
12/16/2022 08:05 AM CST

Nicholas N. Scalise, appellant, v.
Jeffrey L. Davis and the Sarpy County
Sheriff's Office, appellees.

___ N.W.2d___

Filed September 30, 2022.    No. S-21-031.

1. **Courts: Appeal and Error.** In an appeal from the county court general civil docket, the district court acts as an intermediate appellate court and not as a trial court.

2. ____: ____. Both the district court and a higher appellate court generally review appeals from the county court for error appearing on the record.

3. **Judgments: Appeal and Error.** When reviewing a judgment for errors appearing on the record, an appellate court's inquiry is whether the decision conforms to the law, is supported by competent evidence, and is neither arbitrary, capricious, nor unreasonable.

4. **Appeal and Error.** An appellate court independently reviews questions of law in appeals from the county court.

5. **Statutes: Appeal and Error.** Statutory interpretation presents a question of law, for which an appellate court has an obligation to reach an independent conclusion irrespective of the determination made by the court below.

6. **Misdemeanors.** For purposes of 18 U.S.C. § 921(a)(33)(A) (2018), a misdemeanor crime of domestic violence is a misdemeanor offense that (1) has, as an element, the use of force and (2) is committed by a person who has a specified domestic relationship with the victim.

7. **Statutes: Words and Phrases.** A divisible statute is a statute that sets out one or more elements of the offense in the alternative.

8. **Criminal Law: Statutes: Convictions.** The circumstance-specific approach applies where the underlying statute refers to specific circumstances rather than to generic crimes and allows a court to look beyond the elements of the prior offense and consider the facts and circumstances underlying an offender's conviction.

Appeal from the District Court for Sarpy County, STEFANIE A. MARTINEZ, Judge, on appeal thereto from the County Court for Sarpy County, TODD J. HUTTON, Judge. Judgment of District Court affirmed.

Hugh I. Abrahamson, of Abrahamson Law Office, and Phillip G. Wright for appellant.

No appearance for appellees.

HEAVICAN, C.J., MILLER-LERMAN, CASSEL, STACY, FUNKE, PAPIK, and FREUDENBERG, JJ.

FUNKE, J.

## INTRODUCTION

In 2020, the Sarpy County, Nebraska, sheriff's office denied Nicholas N. Scalise's application for a certificate to possess a handgun. In doing so, the sheriff determined that Scalise's prior conviction for third degree assault qualified as a "misdemeanor crime of domestic violence" under 18 U.S.C. § 922(g)(9) (2018). Scalise filed a handgun appeal with the county court, arguing that he had never been convicted of a crime of domestic violence. The county court denied Scalise's relief, as did the district court on appeal. For reasons set forth herein, we affirm the order of the district court, affirming the order of the county court.

## BACKGROUND

In 2018, Scalise was arrested and charged with strangulation from an incident arising out of an argument with the victim. Pursuant to a plea agreement, an amended criminal complaint was filed, which charged Scalise with third degree assault, a Class I misdemeanor, and alleged that Scalise "did intentionally, knowingly or recklessly cause bodily injury to, and/or did threaten [the victim] in a menacing manner, in violation of Section 28-310(1)." Scalise pled guilty to the amended complaint and was sentenced to a term of probation. After successfully completing probation in 2020, Scalise attempted

to purchase a handgun, but was advised by the retailer that he needed to obtain a permit from the Sarpy County sheriff's office.

The Sarpy County sheriff's office denied Scalise's application for a handgun certificate pursuant to Neb. Rev. Stat. § 69-2404 (Reissue 2016) and 18 U.S.C. 922(g)(9), finding that Scalise's conviction for third degree assault met the criteria for domestic violence under federal law. Scalise then filed an appeal pursuant to Neb. Rev. Stat. § 69-2406 (Reissue 2016) in the county court for Sarpy County, asserting that he had never been convicted of domestic violence or a crime of domestic violence.

At the hearing before the county court, the sheriff's office offered exhibit 1, which contained the following documents: the amended complaint charging Scalise with third degree assault, the order placing Scalise on probation, Scalise's request for satisfactory discharge from probation, the order releasing Scalise from probation, incident reports from the Papillion, Nebraska, police department, and the victim/witness statement.

Scalise offered exhibits 2, 3, and 4, which consisted of the criminal complaint charging him with strangulation; the amended complaint charging him with third degree assault; the journal entry and order showing his entry of a guilty plea to the amended charge; the complete transcript from the January 24, 2019, sentencing hearing; the order placing him on probation; his request for satisfactory discharge from probation; the order releasing him from probation; the sheriff's denial of his application for a handgun certificate; and a copy of his handgun appeal.

After the hearing, the county court issued an order denying the appeal and finding that the sheriff's office acted in accordance with state and federal law. In its order, the court explained that § 922(g)(9) "prohibits any person who has been convicted in any court of a misdemeanor crime of domestic violence to . . . possess in or affecting commerce, any firearm or ammunition."

In discussing what constitutes a domestic violence conviction, the county court looked to the U.S. Supreme Court's opinion in *United States v. Hayes*,[1] which found that a domestic relationship need not be a defining element of the predicate offense under consideration when evaluating whether a handgun certificate can properly be issued. Because Scalise was convicted of third degree assault, which is a misdemeanor under Neb. Rev. Stat. § 28-310 (Reissue 2016) that contains elements of "[i]ntentionally, knowingly, or recklessly caus[ing] bodily injury to another person" or "threatens another in a menacing manner," and because the adduced evidence showed that Scalise and the victim of the assault were in a domestic relationship, the court found the restrictions established by § 922(g)(9) apply to Scalise.

Scalise appealed to the district court, which entered an opinion and order affirming the county court's order and concluding that the restrictions established by § 922(g)(9) apply to Scalise, resulting in his ineligibility to obtain a handgun certificate.

Scalise timely appealed, but the sheriff's office declined to file a brief in this appeal. We moved this case to our docket on our own motion.

## ASSIGNMENTS OF ERROR

Scalise assigns, consolidated, that the district court erred in affirming the county court's finding that Scalise's third degree assault conviction qualified as a predicate offense for the purpose of a federal prohibition on firearms under § 922(g)(9). Scalise also argues the court erred in failing to advise him that if convicted, he would lose the right to bear arms. Scalise further makes a number of constitutional arguments pertaining to the Second Amendment to the U.S. Constitution, double jeopardy, and due process.

---

[1] *United States v. Hayes*, 555 U.S. 415, 129 S. Ct. 1079, 172 L. Ed. 2d 816 (2009).

## STANDARD OF REVIEW

[1-3] In an appeal from the county court general civil docket, the district court acts as an intermediate appellate court and not as a trial court.[2] Both the district court and a higher appellate court generally review appeals from the county court for error appearing on the record.[3] When reviewing a judgment for errors appearing on the record, an appellate court's inquiry is whether the decision conforms to the law, is supported by competent evidence, and is neither arbitrary, capricious, nor unreasonable.[4]

[4,5] We independently review questions of law in appeals from the county court.[5] Statutory interpretation presents a question of law, for which an appellate court has an obligation to reach an independent conclusion irrespective of the determination made by the court below.[6]

## ANALYSIS

### Applicable Federal Law

Scalise applied for his handgun certificate under § 69-2404. However, § 69-2404 states that an applicant cannot obtain a handgun certificate if the applicant is prohibited from purchasing or possessing a handgun by § 922. Section 922(g)(9) makes it unlawful for any person who has been convicted of a "misdemeanor crime of domestic violence" to possess a firearm. Under 18 U.S.C. § 921(a)(33)(A) (2018), the term "misdemeanor crime of domestic violence" means an offense that

> (i) is a misdemeanor under Federal, State, or Tribal law; and

> (ii) has, as an element, the use or attempted use of physical force, or the threatened use of a deadly weapon,

---

[2] See *In re Conservatorship of Mosel*, 234 Neb. 86, 449 N.W.2d 220 (1989).

[3] *State v. Avey*, 288 Neb. 233, 846 N.W.2d 662 (2014).

[4] *Id.*

[5] *Id.*

[6] *State v. Beitel*, 296 Neb. 781, 895 N.W.2d 710 (2017).

committed by a current or former spouse, parent, or guardian of the victim, . . . by a person who is cohabiting with or has cohabited with the victim as a spouse, parent, or guardian, or by a person similarly situated to a spouse, parent, or guardian of the victim.

[6] In *Hayes*, the U.S. Supreme Court simplified this definition and determined that the most sensible reading of § 921(a)(33)(A) defines the term "misdemeanor crime of domestic violence" as a misdemeanor offense that "(1) 'has, as an element, the use [of force],' and (2) is committed by a person who has a specified domestic relationship with the victim."[7] The Court emphasized that such definition does not require the specified domestic relationship to be an element of the predicate-offense statute.[8]

In *United States v. Castleman,*[9] the U.S. Supreme Court articulated the definition of the phrase "use of physical force" for purposes of § 921(a)(33)(A). In *Castleman*, the appellant pled guilty to "'intentionally or knowingly caus[ing] bodily injury'" to the mother of his child, in violation of Tennessee state law. In a subsequent prosecution for being a prohibited person in possession of a firearm, the appellant argued his Tennessee conviction did not qualify as a "misdemeanor crime of domestic violence" under § 922(g)(9), because it did not have, as an element, the use of physical force. The U.S. Supreme Court disagreed and held that the Tennessee statute under which the appellant was convicted defined three types of assault, one of which was "'[i]ntentionally, knowingly or recklessly caus[ing] bodily injury to another.'"[10] The Court concluded that the appellant's conviction qualified as a "'misdemeanor crime of domestic violence'" because the appellant

---

[7] *Hayes*, *supra* note 1, 555 U.S. at 426.

[8] *Id*.

[9] *United States v. Castleman*, 572 U.S. 157, 159, 134 S. Ct. 1405, 188 L. Ed. 2d 426 (2014).

[10] *Id.*, 572 U.S. at 168 (quoting Tenn. Code Ann. § 39-13-101 (2006)).

pleaded guilty to having "'intentionally or knowingly cause[d] bodily injury'" to the mother of his child and because the knowing or intentional causation of bodily injury necessarily involves the use of force.[11]

Then, in *Voisine v. United States*,[12] the U.S. Supreme Court extended the definition of the phrase "misdemeanor crime of domestic violence" to include misdemeanor assault statutes covering reckless conduct. In doing so, the *Voisine* Court held that a statute which prohibits the reckless causing of bodily injury also has, as an element, the use of physical force.

As such, in determining whether an applicant is prohibited from possessing a firearm, a court must consider whether the predicate conviction involved the use of force and whether the offender and the victim were involved in a domestic relationship. In making these determinations, a court is limited as to what evidence can be considered.

### Approaches

Federal courts have outlined three separate approaches a court may employ in determining if a prior conviction qualifies as a predicate offense to trigger a federal consequence. First, the U.S. Supreme Court has developed and refined a methodology referred to as the "categorical approach" to determine whether a person's prior state conviction qualifies as a generic federal offense described in the relevant statute.[13]

Under the categorical approach, a court must determine only whether the defendant was convicted under a criminal statute

---

[11] *Id.*, 572 U.S. at 169.

[12] *Voisine v. United States*, 579 U.S. 686, 136 S. Ct. 2272, 195 L. Ed. 2d 736 (2016).

[13] *See, Gonzales v. Duenas-Alvarez*, 549 U.S. 183, 127 S. Ct. 815, 166 L. Ed. 2d 683 (2007) (considering generic federal offenses for purposes of immigration law); *Taylor v. United States*, 495 U.S. 575, 110 S. Ct. 2143, 109 L. Ed. 2d 607 (1990) (considering generic federal offenses for purposes of Armed Career Criminal Act of 1984). See, also, *Orellana v. Mayorkas*, 6 F.4th 1034 (9th Cir. 2021).

that categorically matches the generic federal offense, without considering the particular facts underlying the defendant's conviction.[14] In doing so, the court considers only the statutory language of the criminal statute of conviction and the generic federal offense, and may not consider any evidence relating to the defendant's conduct.[15]

[7] However, for the limited purpose of "help[ing to] implement the categorical approach," the U.S. Supreme Court has recognized a narrow range of cases in which courts may apply a different approach: the modified categorical approach.[16] Courts may use the modified categorical approach only where the criminal statute of conviction is divisible.[17] A divisible statute is a statute that sets out one or more elements of the offense in the alternative.[18]

Under this approach, a court must determine "'which of the [alternative] statutory offenses . . . formed the basis of the defendant's conviction.'"[19] To make this determination, a court may look to only a narrow category of documents, colloquially known as *Shepard* documents,[20] such as "'the indictment or information and jury instructions or, if a guilty plea is at issue, . . . the plea agreement, plea colloquy or some comparable judicial record of the factual basis for the plea.'"[21] However, a court may not look at other evidence, such as

---

[14] *Orellana, supra* note 13 (citing *Taylor, supra* note 13).

[15] *Id.*

[16] *Descamps v. United States*, 570 U.S. 254, 263, 133 S. Ct. 2276, 186 L. Ed. 2d 438 (2013).

[17] *Id.*

[18] *Descamps, supra* note 16.

[19] *Orellana, supra* note 13, 6 F.4th at 1039 (quoting *Descamps, supra* note 16).

[20] *Shepard v. United States*, 544 U.S. 13, 125 S. Ct. 1254, 161 L. Ed. 2d 205 (2005).

[21] *Orellana, supra* note 13, 6 F.4th at 1040 (quoting *Nijhawan v. Holder*, 557 U.S. 29, 129 S. Ct. 2294, 174 L. Ed. 2d 22 (2009)).

police reports or victim statements, to determine what crime the defendant actually committed, because such review would amount to a collateral trial and raise concerns pertaining to the Sixth Amendment to the U.S. Constitution.[22]

[8] More recently, in *Nijhawan v. Holder*,[23] the U.S. Supreme court recognized a third approach: the "'circumstance-specific'" approach. Such approach applies where the underlying statute refers to specific circumstances, rather than to generic crimes. This approach allows a court to look beyond the elements of the prior offense and consider the "facts and circumstances underlying an offender's conviction."[24] One indication that a statute refers to specific circumstances rather than to generic crimes is statutory language focusing on "the conduct involved '*in*'" rather than "the elements *of*" an offense.[25] For example, the *Nijhawan* Court stated that the Immigration and Nationality Act provides for the deportation of any alien convicted of an aggravated felony. Under this act, the definition of "'aggravated felony'" includes "'an offense that . . . involves fraud or deceit in which the loss to the victim or victims exceeds $10,000.'"[26] In *Nijhawan*, the U.S. Supreme Court determined that this particular provision in the Immigration and Nationality Act invoked the circumstance-specific approach because the words "in which" could refer to "the conduct involved 'in' the commission of the offense of conviction, rather than to the elements of the offense."[27]

A statute may also present a hybrid situation in which one section of the statute is governed by one approach, while

---

[22] See *Orellana, supra* note 13 (citing *Shepard, supra* note 20).

[23] *Nijhawan, supra* note 21, 557 U.S. at 34.

[24] *Id.* Accord *U.S. v. White*, 782 F.3d 1118 (10th Cir. 2015).

[25] *Nijhawan, supra* note 21, 557 U.S. at 39. See, also, *Bogle v. Garland*, 21 F.4th 637 (9th Cir. 2021).

[26] *Nijhawan, supra* note 21, 557 U.S. at 32.

[27] *Id.*, 557 U.S. at 39 (emphasis omitted).

another is subject to a different approach. For example, although not expressly stated, it appears that the *Hayes* Court employed a hybrid approach by applying the circumstance-specific approach to the specific domestic relationship requirement and the categorical approach to the "use of physical force" requirement.[28]

Further, in *U.S. v. Doss*,[29] the Ninth Circuit analyzed 18 U.S.C. § 3559(e)(1) (2018), which delineates federal sentencing guidelines for repeat sex offenders and provides for a mandatory minimum life sentence for certain federal sex offenses if the defendant has a "prior sex conviction in which a minor was the victim." Relying on the U.S. Supreme Court's reasoning in *Nijhawan*, the *Doss* court concluded that § 3559(e) presents a hybrid situation because while the phrase "a prior sex offense conviction" requires application of the categorical approach, the phrase "in which a minor was the victim" calls for application of the circumstance-specific approach.

Thus, like § 3559(e), § 921(a)(33)(A)(ii) also implicates the hybrid approach employed in *Hayes* and *Doss*. Here, as mentioned earlier, § 921(a)(3)(A)(ii) can be broken into two parts. One provision requires that the predicate offense be committed by a current or former spouse, parent, or guardian of the victim, by a person with whom the victim shares a child in common, by a person who is cohabiting with or has cohabited with the victim as a spouse, parent, or guardian, or by a person similarly situated to a spouse, parent, or guardian of the victim. Federal circuit courts generally agree that *Hayes* can be construed as using a circumstance-specific approach to

---

[28] See *United States v. Hayes, supra* note 1. See, also, *U.S. v. Price*, 777 F.3d 700 (4th Cir. 2015) (stating that *Hayes* Court reasoned that legislative history supported use of factual analysis on specific issue of domestic relationship); *U.S. v. Gonzalez-Medina*, 757 F.3d 425 (5th Cir. 2014) (characterizing *Hayes* as holding that domestic relationship requirement need not be element of predicate statute of conviction and could be determined under circumstance-specific approach).

[29] *U.S. v. Doss*, 630 F.3d 1181 (9th Cir. 2011).

determine the existence of the specified domestic relationship as required by § 921(a)(33)(A)(ii). In reaching these conclusions, federal circuit courts considered the statutory language ("committed by"), the broad Congressional purpose of the law, and the fact that only one-third of states had criminal statutes that specifically proscribed domestic violence when the provision was enacted.[30]

By contrast, the other provision in § 921(a)(3)(A)(ii) requires that the predicate offense has, as an element, "the use or attempted use of physical force." Although the *Hayes* court employed the categorical approach to the second provision, such approach is not appropriate here, because § 28-310(1) is a divisible statute.

Under § 28-310(1), a person commits third degree assault under two enumerated alternatives: "(a) Intentionally, knowingly, or recklessly causes bodily injury to another person; or (b) [t]hreatens another in a menacing manner." Because § 28-310(1) sets out one or more elements of the offense in the alternative, the statute is a divisible statute. Though a conviction secured under alternative (a) may trigger the prohibition on firearms under federal law, a conviction under alternative (b) will not.

As such, when considering an appeal from the denial of an application for a handgun certificate, Nebraska courts should employ the circumstance-specific approach to the specified domestic relationship requirement, but employ the modified categorical approach to the "use of physical force" requirement.

### Application

In this matter, Scalise's primary argument is that his third degree assault conviction under § 28-310 does not qualify as a misdemeanor crime of domestic violence because he was not convicted of domestic assault under Neb. Rev. Stat. § 28-323

---

[30] *Gonzalez-Medina, supra* note 28 (citing *Hayes, supra* note 1).

(Reissue 2016) and because the sentencing court did not make a finding of a domestic relationship.

In making this argument, Scalise fails to appreciate that § 921(a)(33)(A)(ii)'s definition of the phrase "misdemeanor crime of domestic violence" does not require that the predicate conviction be one of domestic assault or domestic violence. Rather, the federal statute simply requires that the predicate conviction have, as an element, the use of physical force and be committed by a person who has a specified domestic relationship with the victim.[31] As such, a conviction under either § 28-310 or § 28-323 can satisfy the definition of a misdemeanor crime of domestic violence depending on the circumstances of the offense. Further, to the extent Scalise argues that § 28-310 does not have a domestic relationship element, such argument is negated by the fact that the circumstance-specific approach, applicable to the domestic relationship requirement of § 921(a)(33)(A)(ii), allows us to look beyond the elements of § 28-310.

Specifically, the circumstance-specific approach allows this court to go beyond the limited universe of *Shepard* documents[32] and to the facts and circumstances underlying Scalise's conviction for third degree assault.[33] Contrary to Scalise's claim that the evidence does not establish a domestic relationship between himself and the victim, the police department's incident report, as well as the victim/witness statement, establishes that Scalise and the victim were in a dating relationship for approximately 5 years, which included cohabitation for a period of time.

Additionally, Scalise's reliance on the definition of "intimate partner" in § 28-323(8) to support his argument is misplaced and erroneous. Section 28-323(8) states:

---

[31] See *Hayes, supra* note 1.

[32] *Shepard, supra* note 20.

[33] See *Lindo v. Secretary, U.S. Department of Homeland Security*, 766 Fed. Appx. 897 (11th Cir. 2019). See, also, *Nijhawan, supra* note 21.

> *For purposes of this section,* intimate partner means
> a spouse; a former spouse; persons who have a child
> in common whether or not they have been married or
> lived together at any time; and persons who are or were
> involved in a dating relationship. For purposes of this
> subsection, dating relationship means frequent, intimate
> associations primarily characterized by the expectation of
> affectional or sexual involvement, but does not include
> a casual relationship or an ordinary association between
> persons in a business or social context.

(Emphasis supplied.) It is clear that § 28-323(8)'s definition
of "intimate partner" is for purposes of that particular statute
and has no bearing on our analysis under § 921(a)(33)(A)(ii).
Thus, the district court properly found that Scalise's conviction
satisfies the domestic relationship requirement of § 921(a)(33).
This assignment of error is without merit.

In regard to the "use of physical force" requirement, Scalise
assigns that the "trial court failed to determine if [his] simple
assault conviction contained the necessary elements of know-
ingly or recklessly causing bodily injury." However, in his
brief, he makes no arguments regarding this assigned error.
Instead, he focuses on the alleged errors as to his relation-
ship with the victim. In order to be considered by an appellate
court, an alleged error must be both specifically assigned and
specifically argued in the brief of the party asserting the error.[34]
Accordingly, we will not address this argument.

## NOTICE REQUIREMENT

Scalise further contends that the county court failed to give
him notice that his conviction could prevent him from pos-
sessing a handgun in the future as required by Neb. Rev. Stat.
§ 29-2291(1) (Reissue 2016). Section 29-2291(1) provides:

> When sentencing a person convicted of a misdemeanor
> crime of domestic violence as defined in 18 U.S.C.

---

[34] *Humphrey v. Smith*, 311 Neb. 632, 974 N.W.2d 293 (2022).

921(a)(33), as such section existed on July 18, 2008, the court shall provide written or oral notification to the defendant that it may be a violation of federal law for the individual: To ship or transport in interstate or foreign commerce, or possess in or affecting commerce, any firearm or ammunition; or to receive any firearm or ammunition which has been shipped or transported in interstate or foreign commerce.

The record before us clearly shows that the court gave Scalise the requisite advisement pursuant to § 29-2291. As such, this assignment of error is meritless.

## Remaining Assignments of Error

Lastly, as previously mentioned, Scalise assigned as error a number of constitutional arguments concerning the Second Amendment, double jeopardy, and due process. We decline to address these assignments of error because neither the county court nor the district court addressed Scalise's constitutional claims. A constitutional issue not presented to or passed upon by the trial court is not appropriate for consideration on appeal.[35]

## CONCLUSION

For the foregoing reasons, the district court did not err in affirming the county court's denial of Scalise's handgun appeal.

Affirmed.

---

[35] *State v. Boche*, 294 Neb. 912, 885 N.W.2d 523 (2016).

Stacy, J., concurring.

The majority opinion provides much-needed guidance on the requirement in Neb. Rev. Stat. § 69-2404 (Reissue 2016) that applicants who are "prohibited from purchasing or possessing a handgun by 18 U.S.C. 922" shall not receive a handgun certificate. I agree in all respects with the majority's analysis and disposition, but write separately to highlight some of the

procedural questions that remain unanswered in appeals from the denial of handgun certificates.

This appeal is authorized by Neb. Rev. Stat. § 69-2406 (Reissue 2016), which provides, in full:

> Any person who is denied a certificate, whose certificate is revoked, or who has not been issued a certificate upon expiration of the three-day period may appeal within ten days of receipt of the denial or revocation to the county court of the county of the applicant's place of residence. The applicant shall file with the court the specific reasons for the denial or revocation by the chief of police or sheriff and a filing fee of ten dollars in lieu of any other filing fee required by law. The court shall issue its decision within thirty days of the filing of the appeal.

Although this statute affords individuals the right to appeal to the county court from the denial or revocation of a handgun certificate, it is largely silent on the procedure for such an appeal. Who are the parties of record in such an appeal? Must the chief of police or sheriff be served with a notice of the appeal? What does the appellate record consist of and who has the responsibility to prepare it? Is it appropriate to hold an evidentiary hearing before the county court? Is the decision of the chief of police or sheriff reviewed by the county court de novo, reviewed for errors appearing on the record, or reviewed for an abuse of discretion? What relief is the county court authorized to order?[1] These procedural questions are not addressed in § 69-2406, and they are not adequately addressed in any other statute setting out default appeal procedures.

Neb. Rev. Stat. § 25-1937 (Reissue 2016) addresses the default procedure for appeals "[w]hen the Legislature enacts

---

[1] Compare Neb. Rev. Stat. § 84-917 (Reissue 2016) (providing that in appeals under Administrative Procedure Act district court "may affirm, reverse, or modify the decision of the agency or remand the case for further proceedings").

a law providing for an appeal without providing the procedure
therefor . . . ." It provides that "the procedure for appeal to the
district court shall be the same as for appeals from the county
court to the district court in civil actions" and states that in
such appeals, "[t]rial in the district court shall be de novo upon
the issues made up by the pleadings in the district court."[2]
But § 25-1937 does not describe the appellate procedure or
standard of review for appeals that are to be initiated in *county
court*, as set forth in § 69-2406.

Neb. Rev. Stat. § 25-2701 (Reissue 2016) provides a proce-
dure for county courts to follow when no other specific proce-
dure has been enumerated by the Legislature. It provides:

> All provisions in the codes of . . . civil procedure govern-
> ing actions and proceedings in the district court not in
> conflict with statutes specifically governing procedure in
> county courts and related to matters for which no specific
> provisions have been made for county courts shall govern
> and apply to all actions and proceedings in the county
> court.[3]

While helpful, § 25-2701 does not fill the procedural void
created by § 69-2406. This is so because the statutory proce-
dures for appeals before the district court either conflict with
the limited statutory procedures announced in § 69-2406[4] or
do not fit the statutory scheme described by § 69-2406, under

---

[2] § 25-1937.

[3] § 25-2701.

[4] Compare § 69-2406 (providing that applicant has 10 days to appeal from
decision or revocation and must "file with the court the specific reasons
for the denial or revocation," as well as pay filing fee of $10) with Neb.
Rev. Stat. § 25-2729 (Cum. Supp. 2020) (providing that appealing party
has *30 days* after entry of county court *judgment* or *final order* to file
notice of appeal with clerk of county court and deposit docket fee), Neb.
Rev. Stat. § 25-2733 (Reissue 2016) (providing that "the district court
shall review the case for error appearing on the *record made in the county
court*"), and § 25-1937 (providing that "[t]rial in the district court shall be
de novo upon the issues *made up by the pleadings in the district court*")
(emphasis supplied).

which there is no judgment or final order from which to appeal. Under the existing provisions of § 69-2406, it is not even clear whether the county court has a record to review beyond the applicant's description of the "specific reasons for the denial or revocation by the chief of police or sheriff."[5]

Section 69-2406 was intended to give applicants an expedited appeal process when a handgun certificate is denied or revoked by the chief of police or the sheriff. But until the Legislature establishes a clear statutory procedure to govern such appeals, there will be continued uncertainty and a lack of uniformity in how these appeals are processed and resolved in the county courts.

CASSEL, J., joins in this concurrence.

---

[5] See § 69-2406. But, see, 272 Neb. Admin. Code, ch. 22, § 006.03 (2022) ("[t]he agency to which an application was made will preserve evidence of the reason(s) for denial or revocation for at least 30 days, should the applicant appeal the denial or revocation"). Cf. Neb. Rev. Stat. § 69-2414 (prescribing procedure for applicants denied right to purchase or receive handgun to petition Nebraska State Patrol requesting "amendment of the record pertaining to him or her").