IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**
**(Memorandum Web Opinion)**

SHAUL-BOLEK V. BOX BUTTE GEN. HOSP.

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

MANDY SHAUL-BOLEK, AS AN INDIVIDUAL, NEXT OF KIN, AND BIOLOGICAL PARENT OF ATLEY BOLEK, A MINOR, APPELLANTS,

V.

BOX BUTTE GENERAL HOSPITAL AND KACY LEHL, APPELLEES.

Filed December 2, 2025.    No. A-25-222.

Appeal from the District Court for Box Butte County: TRAVIS P. O'GORMAN, Judge. Affirmed.

Spencer W. Werth and Olivia F. Stanek, of Fraser Stryker, P.C., L.L.O., for appellants.

Travis W. Tettenborn and Isaiah J. Frohling, of Cline, Williams, Wright, Johnson & Oldfather, L.L.P., for appellees.

RIEDMANN, Chief Judge, and MOORE and BISHOP, Judges.

BISHOP, Judge.

## I. INTRODUCTION

Mandy Shaul-Bolek and her minor son, Atley Bolek, were at Box Butte General Hospital (hospital), where Atley had blood drawn by Kacy Lehl, an employee of the hospital. After inserting a needle into Atley's arm, Lehl moved to silence her cell phone. The movement caused pain to Atley, causing him to subsequently fall and hit his head when he stood up. Mandy and Atley brought an action against the hospital and Lehl under the Political Subdivision Tort Claims Act (PSTCA), Neb. Rev. Stat. § 13-901 et seq. (Reissue 2022). The Box Butte County District Court granted summary judgment in favor of the hospital and Lehl. It determined the undisputed facts showed that the notice of the tort claim was not filed with the official described under § 13-905 within the 1-year timeframe prescribed by the PSTCA. We affirm.

- 1 -

## II. BACKGROUND

We first provide an overview of the PSTCA provisions relevant to the issues on appeal.

### 1. Filing Claim Under PSTCA

The immunity of states from suit is a fundamental aspect of the sovereignty which the States enjoyed before ratification of the Constitution and which they retain today. *Anthony K. v. State*, 289 Neb. 523, 855 N.W.2d 802 (2014). It is inherent in the nature of sovereignty for a state not to be amenable to suit of an individual without its consent. *Id.*

Under the Nebraska Constitution, "[t]he state may sue and be sued, and the Legislature shall provide by law in what manner and in what courts suits shall be brought." Neb. Const. art. V, § 22. This constitutional provision permits the state to lay its sovereignty aside and consent to be sued on such terms and conditions as the Legislature may prescribe. *Joshua M. v. State*, 316 Neb. 446, 5 N.W.3d 454 (2024). It has long been held that this constitutional provision is not self-executing, and that no suit may be maintained against the State or its political subdivisions unless the Legislature, by law, has so provided. *Id.*

The PSTCA reflects a limited waiver of governmental immunity and prescribes the exclusive procedure for maintenance of a tort claim against a political subdivision or its officers, agents, or employees. *Reiber v. County of Gage*, 303 Neb. 325, 928 N.W.2d 916 (2019). See, also, § 13-902. The Nebraska Supreme Court has made clear that county hospitals are independent political subdivisions subject to the provisions of the PSTCA. See *Brothers v. Kimball Cty. Hosp.*, 289 Neb. 879, 857 N.W.2d 789 (2015).

The filing of presentment of a claim to the appropriate political subdivision is a condition precedent to the commencement of a suit under the PSTCA. *Brothers v. Kimball Cty. Hosp., supra*. The PSTCA provides, in pertinent part:

> Every claim against a political subdivision permitted under the [PSTCA] shall be forever barred unless within one year after such claim accrued the claim is made in writing to the governing body. Except as otherwise provided in this section, all suits permitted by the act shall be forever barred unless begun within two years after such claim accrued.

§ 13-919(1). The same limitation applies for suits against an employee of a political subdivision acting within the scope of their employment. See § 13-920(1) and (3). Section 13-905 describes the person designated to receive notice of a tort claim under the PSTCA:

> All tort claims under the [PSTCA] . . . shall be filed with the clerk, secretary, or other official whose duty it is to maintain the official records of the political subdivision, or the governing body of a political subdivision may provide that such claims may be filed with the duly constituted law department of such subdivision. It shall be the duty of the official with whom the claim is filed to present the claim to the governing body.

Strict compliance with the presentment requirement is necessary; even where the purpose of the written notice requirement has been satisfied, failure to file a claim subject to the PSTCA with the person designated in § 13-905 within the 1-year time frame is fatal. See *Brothers v. Kimball Cty. Hosp., supra*.

With these statutory provisions in mind, we turn to the circumstances of the case before us.

## 2. PURPORTED INJURIES AND NOTICE OF CLAIM

The blood draw incident took place on June 27, 2022. Almost a year later, on June 20, 2023, a letter was sent via certified mail to Box Butte County clerk Martie Burke and the secretary of the board of trustees for the hospital, John Annen. The letter read, in relevant part:

> Pursuant to the [PSTCA], Mr. [Atley] Bolek hereby asserts a claim against Box Butte General Hospital and Box Butte County. As Mr. [Atley] Bolek is a minor, this claim is being brought on his behalf by his parents, Brad Bolek and Many [sic] Shaul-Bolek. This letter shall constitute formal written notice of this claim as required by Neb. Rev. Stat. §13[-]901 *et seq.*

(Emphasis in original.)

## 3. COMPLAINT

On June 26, 2024, a complaint was filed in the district court against the hospital and Lehl asserting medical malpractice. The caption of the complaint read: "MANDY SHAUL-BOLEK, as individual, next of kin, and biological parent of, ATLEY BOLEK, a minor, Plaintiffs[.]" An introductory sentence in the complaint states, "Plaintiffs, Mandy Shaul-Bolek, as individual, next of kin and biological parent of, Atley Bolek ('Plaintiffs' herein), for their Complaint against Defendants, . . . ." The first numbered paragraph of the complaint describes the "Plaintiff" as "Mandy Shaul-Bolek," and that "[s]he is the mother of Plaintiff Atley Bolek."

The complaint specifically alleged that Lehl was an "agent or employee" of the hospital and that she negligently performed a routine blood draw on Atley which "direct[ly] and proximate[ly] result[ed]" in a "closed head injury." It claimed that "[t]he result and inattention by . . . Lehl caused Atley . . . significant pain," which "triggered a vasovagal syncope reflex" and when Atley "stood up, he fainted and fell backward, hitting his head against the floor," where he then "started seizing." The complaint further alleged that Lehl's status as a hospital employee made the hospital vicariously liable for Atley's injuries. According to the complaint, "Plaintiff Atley" incurred or will incur the following damages as a result of Lehl's purported negligence: "[p]ast and future medical expenses"; "[p]ast and future physical and mental pain, suffering, anguish, and emotional distress"; and "[p]ast and future embarrassment, humiliation, inconvenience, and loss of enjoyment of life." It further alleged that on June 20, 2023, "a written notice of claim was filed with the clerk, secretary, or other official whose duty it is to maintain the official records" of the hospital, and that there was no agreement or final disposition of the claim within 6 months of filing the claim.

## 4. ANSWER AND MOTION FOR SUMMARY JUDGMENT

In the answer filed by the hospital and Lehl, they admitted the hospital was a political subdivision within the meaning of the PSTCA and that Lehl was its employee who had performed a blood draw on Atley in 2022. They also acknowledged that Burke and Annen were sent written notice of the claims. However, they denied any negligence and alleged the claims in the complaint were time barred for "failure to comply with the notice and filing requirements" of the PSTCA.

The hospital and Lehl subsequently filed a motion for summary judgment, asserting the "Plaintiff" did not comply with § 13-905. They argued the suit was barred because of Mandy's

failure to "file her tort claim 'with the clerk, secretary, or other official whose duty it is to maintain the official records of the political subdivision[.]'"

## 5. Summary Judgment Evidence and Arguments

On December 20, 2024, a hearing was held on the motion for summary judgment. The applicability of the PSTCA was not disputed by the parties. The district court received various affidavits, documents, and copies of the pleadings as evidence. The relevant evidence and arguments of the parties are summarized below.

### (a) Evidence Presented

The affidavit of Lori Mazanec was received by the district court. According to the affidavit, Mazanec was the "Chief Executive Officer" for the hospital and had served in that position since 2016. As part of her position, she "keep[s] and maintain[s] records for" the hospital's board of trustees. At no point was Mazanec served with written notice of the tort claim.

A copy of the hospital's bylaws was attached to Mazanec's affidavit. The bylaws provide that the "Board of Trustees is the governing body of the Hospital" and is responsible "for the operation of the Hospital." The board of trustees is empowered to "provide for the administration of the day-to-day management of the Hospital through an experienced and qualified Administrator." The person serving as the "Board's representative in the operation of the Hospital may assume the title of Administrator or Chief Executive Officer." Article IV, § 4.02(A) of the bylaws reads, "The Administrator of the Hospital or his or her designee shall be the Recording Secretary for the Board of Trustees." Section 4.03(D)(2) of the same article states that the "duties of the Recording Secretary" include "maintain[ing] the records of the Board and keep[ing] a complete record of the proceedings of all meetings[.]" In her affidavit, Mazanec averred her position as chief executive officer made her the administrator pursuant to article IV, § 4.02(A) of the bylaws. As administrator, she also served as the recording secretary for the board of trustees. Mazanec stated she had "not delegated that role to anyone else."

The district court also received an affidavit authored by Mandy's counsel. He indicated that on June 20, 2023, he served notice of a PSTCA claim on Burke and Annen via certified mail. Counsel averred that the hospital's bylaws are not publicly available. However, "upon doing research on the [h]ospital," counsel "discovered" an unrelated lawsuit initially filed against the hospital in 2021. In that case, notice was sent to the acting Box Butte County Clerk and Annen, and in the hospital's answer, it admitted the notice requirements of the PSTCA were satisfied.

Copies of the pleadings from this previous lawsuit were attached to counsel's affidavit. In that suit, the plaintiffs' 2022 amended complaint alleged in paragraph 28 that "written notice of a claim was filed with the clerk, secretary, or other official whose duty it is to maintain official records of" the hospital, in compliance with the PSTCA. Attached to the amended complaint was a letter sent to and received by Judy Messersmith, the Box Butte County Clerk at the time, and Annen. In its answer, the hospital "admit[ed] paragraph 28 of the [a]mended [c]omplaint."

### (b) Arguments Supporting Summary Judgment

In their brief in support of summary judgment, the hospital and Lehl argued that Mazanec, as the hospital's chief executive officer, administrator, and recording secretary, "had a

bylaw-enumerated duty to act as custodian of records and to keep and report those records" to the hospital's board of trustees. This made Mazanec the person designated to receive notice of a tort claim under § 13-905. Since it was undisputed that Mazanec was never served with notice, the hospital and Lehl asserted all claims against them were "forever barred" under §§ 13-919 and 13-920.

To support their argument, the hospital and Lehl pointed to the Nebraska Supreme Court's decision in *Brothers v. Kimball Cty. Hosp.*, 289 Neb. 879, 857 N.W.2d 789 (2015). In that case, the Supreme Court concluded that the filing of a tort claim with a county hospital's board of trustees chairperson and chief executive officer was insufficient notice under § 13-905 because pursuant to that hospital's bylaws, the secretary of the board of trustees acted as the "'custodian of all records and reports of the Board of Trustees'" and was "'responsible for the keeping and reporting of adequate records of all transactions and of the minutes of all meetings of the Board of Trustees.'" *Brothers v. Kimball Cty. Hosp.*, 289 Neb. at 883, 857 N.W.2d at 794. The Supreme Court stated, "A notice of claim filed only with one unauthorized to receive a claim pursuant to § 13-905 does not substantially comply with the notice requirements of the Act." *Brothers v. Kimball Cty. Hosp.*, 289 Neb. at 894, 857 N.W.2d at 801. In that case, there was no evidence to establish that the chief executive officer was a "de facto clerk, secretary, or official recordkeeper." *Id*. at 895, 857 N.W.2d at 801.

In the present matter, the hospital and Lehl argued the hospital's bylaws explicitly granted Mazanec the duty to maintain the records of the hospital's board of trustees, not the county clerk or Annen.

(c) Arguments Opposing Summary Judgment

Mandy filed a brief with the district court in opposition to the motion for summary judgment. In it, Mandy made two arguments. First, she contended the hospital and Lehl should be prevented from asserting the PSTCA's notice requirements under the equitable doctrine of judicial estoppel. Mandy argued the hospital and Lehl should be estopped from claiming ineffective service of the tort claim under the PSTCA because in the unrelated lawsuit, the notice had been provided to the Box Butte County Clerk and Annen, and the hospital admitted in its answer that the notice satisfied the PSTCA.

Alternatively, Mandy argued the hospital's bylaws created a genuine issue of material fact as to who was the proper person to serve with notice under § 13-905. She explained that Article IV, § 4.02(B) of the bylaws describes the duties of the "Secretary" of the board of trustees. Some of the duties of the secretary include "[f]il[ing] with the County Board, on or before July 15th of each year, a report of the Hospital's proceedings for the preceding year" and "[e]xecut[ing] documents and instruments on behalf of the Hospital when approved by the Board of Trustees[.]" Mandy argued there was a genuine issue of material fact as to whether the "Recording Secretary" or the "Secretary" was the person designated to receive notice under the PSTCA.

(d) Tolling Question

At the hearing on the motion for summary judgment, the district court afforded the parties an opportunity to argue their positions on the record. During her argument, Mandy's counsel brought the tolling provisions contained in § 25-213 to the attention of the court, stating:

Finally -- and this was not in my brief but pointed out to counsel -- assuming arguendo that plain- -- or [Appellee]s' motion for summary judgment is granted, Mr. [Atley] Bolek is a minor. Under Nebraska Revised Statute 25-213, I think a fair reading of that statute indicates that claims under the [PSTCA] are tolled until he reaches the age of majority.

So even if the Court is inclined to grant the motion for summary judgment, I would ask that the Court grant it without prejudice due to the fact that my client would have another bite at the apple in reserving the proper party if the Court accepts [Appellees'] argument because Nebraska statute and case law in this matter is clear in that he's allowed to reassert those claims, those claims are able to continue.

The district court ordered supplemental briefing on the applicability of the tolling provision under § 25-213. Mandy's supplemental brief does not appear in our record. However, the record before us does contain the supplemental brief filed by the hospital and Lehl. Their primary argument was that the issue of whether Atley could "bring the same claim on his own behalf after removal of his legal disability" was "a separate issue not presently before" the court. They asserted the complaint, as pled, prevented the court from reaching the tolling issue since Mandy, who brought Atley's claim, failed to comply with the PSTCA's notice requirements.

### 6. DISTRICT COURT'S SUMMARY JUDGMENT ORDER

On January 21, 2025, the district court entered an order granting summary judgment in favor of the hospital and Lehl and dismissing the "Plaintiffs' Complaint" "with prejudice." The court concluded it was undisputed that the hospital's bylaws conferred the duty to maintain the hospital's official records with Mazanec, and since she was not served with notice within 1 year of the claims accruing as required by §§ 13-919 and 13-920, the causes of action were time barred under the PSTCA. The court declined to apply judicial estoppel, determining Mandy failed to prove the material elements.

### 7. MOTION TO ALTER OR AMEND

On January 30, 2025, Mandy filed a motion to alter or amend with the district court. The motion sought clarification and/or reconsideration of the applicability of the tolling provision under § 25-213 to Atley's claim against the hospital and Lehl. The motion explained that "despite arguing the issue and providing a supplemental brief on the issue, per the [c]ourt's request, the [c]ourt made no mention, discussion, or ruling on the issue in its" summary judgment order.

A hearing on the motion was held on February 26, 2025. At the hearing, Mandy pointed out that the district court had dismissed the entirety of the complaint with prejudice and argued that under § 25-213, the filing requirements under the PSTCA were tolled for Atley's claim due to his minority. Thus, Mandy was "looking for clarification on the [c]ourt's position" of whether Atley's status as a minor would allow him to reassert his claim at a later date. The following exchange was had on the record regarding the motion:

THE COURT: I guess my question . . . is if I -- if I dealt with that issue as the case is now captioned, how is that not advisory?

[Mandy's Counsel:] I'm sorry.

THE COURT: I said how would my opinion not be advisory on that issue? The minor is not the named plaintiff. We got -- the action that we have now it's the mother on behalf of the minor. That's the action I dismissed. I don't know that the minor -- the tolling provision is even at issue in this case as the case is filed and what's before me right now. So that's basically the reason I didn't touch the issue. I thought it would be an advisory type opinion on an action that's not before me.

[Mandy's Counsel:] We, we brought the matter on behalf of -- by Mandy on behalf of the minor child, so I believe given that fact that she was acting on behalf of the minor child, Atley would be a party to the case.

Later that same day, the district court entered an order denying Mandy's motion to alter or amend. The court stated it "intentionally did not address" § 25-213 in its summary judgment order "because it is inapplicable given the procedural posture of this case." It continued that "[a]ny opinion as to whether the statute of limitations tolled during Atley's minority would be advisory[.]" The court explained the parties could litigate the issue "if and when Atley files an action on his own behalf after reaching the age of majority."

Mandy appeals.

## III. ASSIGNMENTS OF ERROR

Mandy assigns that (1) the district court erred when it granted summary judgment "on the grounds that Appellants failed to serve proper written notice of their claims," as the hospital and Lehl "were judicially estopped from such defense," and (2) the "statute of limitations was tolled" for Atley's claims and therefore the court erred in granting summary judgment.

## IV. STANDARD OF REVIEW

An appellate court reviews the district court's grant of summary judgment de novo, viewing the record in the light most favorable to the nonmoving party and drawing all reasonable inferences in that party's favor. *Czech v. Allen*, 318 Neb. 904, 21 N.W.3d 1 (2025). An appellate court will affirm a lower court's grant of summary judgment if the pleadings and admitted evidence show that there is no genuine issue as to any material facts or as to the ultimate inferences that may be drawn from those facts and that the moving party is entitled to judgment as a matter of law. *Id.*

An appellate court reviews a court's application of judicial estoppel to the facts of a case for abuse of discretion and reviews its underlying factual findings for clear error. *Cleaver-Brooks, Inc. v. Twin City Fire Ins. Co.*, 291 Neb. 278, 865 N.W.2d 105 (2015). A judicial abuse of discretion exists only when the reasons or rulings of a trial judge are clearly untenable, unfairly depriving a litigant of a substantial right and denying a just result in matters submitted for disposition. *Jones v. Colgrove*, 319 Neb. 461, 24 N.W.3d 1 (2025).

## V. ANALYSIS

### 1. DISTINCTION BETWEEN MANDY AND ATLEY'S CLAIMS

Under Nebraska law, injury to a minor results in two causes of action—one on behalf of the minor and the other on behalf of the minor's parents. *Connelly v. City of Omaha*, 284 Neb.

131, 816 N.W.2d 742 (2012). The minor's claim is based on damages caused by the personal or bodily injury sustained by the minor, while the claim of a parent is based on the loss of services during minority and the necessary expenses of treatment for the injured child. *Id.* The cause or right of action of parents is distinct from the cause of action of their child. *Id.* Thus, Atley's alleged injuries in connection with his visit to the hospital gave rise to two separate causes of actions--one in favor of Atley for personal injury and the other in favor of Mandy for loss or damage sustained on account of Atley's injury.

Originally, at common law, an infant could sue only by a guardian, because an infant was not sui juris—a person with legal capacity to act for oneself. *Macku v. Drackett Products Co.*, 216 Neb. 176, 343 N.W.2d 58 (1984). Since 1867, Nebraska has recognized the common law regarding an infant's lack of legal capacity to sue. *Id.* Such recognition is contained in Nebraska's present statute on the matter, Neb. Rev. Stat. § 25-307 (Cum. Supp. 2024): "[T]he action of an infant shall be commenced, maintained, and prosecuted by his or her guardian or next friend." The Nebraska Supreme Court has articulated that minors are "'considered to be under a legal disability and are therefore unable to sue or be sued in their individual capacities; such persons are required to appear in court through a legal guardian, a "next friend," or a guardian ad litem.'" *Carlos H. v. Lindsay M.*, 283 Neb. 1004, 1011, 815 N.W.2d 168, 173 (2012) (quoting *Austin Nursing Center, Inc. v. Lovato*, 171 S.W.3d 845, 849 (Tex. 2005)).

Keeping the above principles in mind, we observe the complaint in this case was filed by Mandy "as individual, next of kin, and biological parent" of Atley. An introductory sentence in the complaint further identified the "Plaintiffs" as Mandy and Atley. We notice the complaint only included a single count for medical malpractice, but the damages requested suggest Mandy was asserting both (1) her individual right to recover for the past and future medical expenses associated with her son's purported injuries and (2) Atley's independent right to recover for alleged bodily harm. While it may have been more precise to distinguish between the two separate causes of action and expressly delineate between Mandy and Atley's claims, Nebraska is a notice pleading jurisdiction, and civil actions are controlled by a liberal pleading regime where fair notice of the claims asserted is all that is required. See *Schmid v. Simmons*, 311 Neb. 48, 970 N.W.2d 735 (2022).

Therefore, the motion for summary judgment before the district court concerned two separate causes of action, one for Mandy individually as Atley's parent and one brought by Mandy on Atley's behalf. The court's order entering summary judgment in favor of the hospital and Lehl reads, "Plaintiffs' Complaint is hereby dismissed with prejudice." This language indicates the court dismissed with prejudice both Mandy's individual claim and Mandy's claim on behalf of Atley under § 25-307.

On appeal, Mandy makes two separate arguments regarding the district court's dismissal of the action. She first asserts that the court erred in declining to apply the equitable doctrine of judicial estoppel to both her and Atley's claims. Alternatively, Mandy contends the tolling provisions found in § 25-213 apply to Atley's claim, and, therefore, the court erred in dismissing his claim with prejudice. We are not persuaded by either argument, as discussed next.

- 8 -

## 2. JUDICIAL ESTOPPEL

Mandy first asserts the district court erred by declining to apply the equitable doctrine of judicial estoppel to both her and Atley's tort claims. She specifically contends that the hospital, through judicial admission, acknowledged that the Box Butte County clerk and Annen were the proper parties to serve with notice in an unrelated lawsuit. Mandy claims "Appellees' contradictory actions," in the current case, amount to "legal backpedaling" that "judicial estoppel was designed to prevent." Brief for appellant at 13.

### (a) Legal Framework

Judicial estoppel is an equitable doctrine that a court invokes at its discretion to protect the integrity of the judicial process. *Becher v. Becher*, 311 Neb. 1, 970 N.W.2d 472 (2022). The doctrine of judicial estoppel protects the integrity of the judicial process by preventing a party from taking a position inconsistent with one successfully and unequivocally asserted by the same party in a prior proceeding. *Id.* Fundamentally, the intent behind the doctrine of judicial estoppel is to prevent parties from gaining an advantage by taking one position in a proceeding and then switching to a different position when convenient in a later proceeding. *Id.* The Nebraska Supreme Court has previously quoted one court's explanation that the purpose of the rule is "'to prevent parties from playing fast and loose with the courts.'" *Cleaver-Brooks, Inc. v. Twin City Fire Ins. Co.*, 291 Neb. at 289, 865 N.W.2d at 114 (quoting *Ryan Operations G.P. v. Santiam-Midwest Lumber Co.*, 81 F.3d 355, 361 (3rd Cir. 1996)).

The judicial estoppel doctrine, however, is to be applied with caution so as to avoid impinging on the truth-seeking function of the court, because the doctrine precludes a contradictory position without examining the truth of either statement. *Becher v. Becher, supra*. Nebraska jurisprudence is clear that before a court may apply the judicial estoppel doctrine, "bad faith or an actual intent to mislead on the part of the party asserting inconsistent positions must be demonstrated." *Cleaver-Brooks, Inc. v. Twin City Fire Ins. Co.*, 291 Neb. at 289, 865 N.W.2d at 114–15.

It is important to note that due to the discretionary nature of judicial estoppel, an appellate court reviews a lower court's application of judicial estoppel to the facts of a case for abuse of discretion and reviews its underlying factual findings for clear error, even in the summary judgment context. See *id.*

### (b) No Abuse of Discretion

We cannot say the district court abused its discretion in declining to apply judicial estoppel. In its summary judgment order, the court explained:

> First, this Court has not adopted or accepted any position in the Hospital's other litigation. There is no evidence of any judicial acceptance or reliance upon the pleadings in *Sherlock, et al v. Box Butte General Hospital*, D. Ct. Box Butte County, Nebraska, Case No. CI 21-0249. Because no court adopted, relied upon, or was persuaded by the Hospital's position, judicial estoppel is inapplicable.

> Likewise, Plaintiffs have not demonstrated any bad faith or intent to mislead by the Hospital. The evidence demonstrates the Hospital, in a prior action with different counsel, chose not to assert a defense based on the plaintiff's alleged compliance with the PSTCA.

Allowing a case to proceed is not a "successful assertion" upon which the Hospital prevailed. Judicial estoppel is inapplicable.

The Nebraska Supreme Court recently stated that for a party to have successfully asserted a position in a prior action for purposes of judicial estoppel "'the party must have been successful in getting the first court to accept the position'" and absent "'such acceptance, the doctrine of judicial estoppel does not apply.'" *Clemens v. Emme*, 316 Neb. 777, 793, 7 N.W.3d 166, 180-81 (2024) (quoting *Jardine v. McVey*, 276 Neb. 1023, 1032, 759 N.W.2d 690, 697 (2009)). Judicial acceptance does not require that a party prevail on the merits, but only that the first court adopted the position urged by the party, as a preliminary matter or as part of a final disposition. *Western Ethanol Co. v. Midwest Renewable Energy*, 305 Neb. 1, 938 N.W.2d 329 (2020).

In her brief, Mandy argues the hospital's answer in the unrelated lawsuit contained "judicial admission[s]" that created a contradiction in the current matter warranting the application of judicial estoppel. Brief for appellant at 13. We disagree. A judicial admission is a formal act done in the course of judicial proceedings which is a substitute for evidence, thereby waiving or dispensing with the production of evidence by conceding for the purpose of litigation that the proposition of fact alleged by the opponent is true. *Jacobs Engr. Group v. ConAgra Foods*, 301 Neb. 38, 917 N.W.2d 435 (2018). The pleadings in a cause are not mere ordinary admissions for the purposes of use in that suit, but are judicial admissions. *Prime Home Care v. Pathways to Compassion*, 283 Neb. 77, 809 N.W.2d 751 (2012). However, matters contained in pleadings in other cases are simple admissions which are merely "'item[s] in the mass of evidence'" and are not final or conclusive in any sense. *Nichols Media Consultants v. Ken Morehead Inv. Co.*, 1 Neb. App. 220, 223, 491 N.W.2d 368, 372 (1992) (quoting 4 John H. Wigmore, Evidence in Trials at Common Law § 1058 (James H. Chadbourn rev. 1972)). Therefore, the hospital's pleadings in the unrelated lawsuit are not judicial admissions for purposes of the case at hand.

As the district court observed in its order, the hospital "in a prior action with different counsel, chose not to assert a defense based on the plaintiff's alleged compliance with the PSTCA['s]" procedural requirements. The presuit claim presentment requirements under the PSTCA are procedural conditions precedent to commencing a tort action against a political subdivision and exist as affirmative defenses. See *Saylor v. State*, 306 Neb. 147, 944 N.W.2d 726 (2020). Affirmative defenses may be waived by a party. See *Simons v. Simons*, 312 Neb. 136, 978 N.W.2d 121 (2022). It is plausible that the hospital's decision not to challenge the notice of claim in the other lawsuit was based on considerations that do not exist in the present case.

Even if Mandy successfully persuaded the district court to adopt her argument with respect to the hospital's purported inconsistent positions, that alone would not have required the court to apply the judicial estoppel doctrine. As noted above, for the doctrine to be applied, there would also need to be a showing of bad faith or actual intent to mislead on the hospital's part. And even if that showing were made, the court would still retain discretion as to whether to apply the doctrine. See *Becher v. Becher, supra*.

Here, as the district court explained, Mandy presented no evidence that the hospital acted in bad faith or with an actual intent to mislead. While we acknowledge that the hospital's bylaws are not publicly available, it is well-settled that there is no legal duty on the part of a political subdivision, or any other party, to inform an adversary of the existence of a statute of limitations

or other nuance of the law, particularly where the plaintiff did not inquire of the political subdivision to whom the claim should have been addressed. *Estate of McElwee v. Omaha Transit Auth.*, 266 Neb. 317, 664 N.W.2d 461 (2003). As the hospital and Lehl note in their brief, interrogatories were received by the court as evidence at the summary judgment hearing. Interrogatory 25 asked Mandy if she or "her agents or representatives communicated with Box Butte General Hospital or any of its employees, agents, or representatives about filing or serving a tort claim[.]" Mandy's responses show she only communicated with the hospital or its agents on two occasions. Mandy stated she received "an apology note" from Lehl and had a conversation with two hospital employees in December 2023 when Atley was getting bloodwork done at the hospital. All she said to those employees was that "there was potential pending litigation." These answers show Mandy never asked the hospital's representatives who should be served with notice. Further, the hospital filed its answer in the unrelated case on April 20, 2022, and the events alleged in Mandy's complaint occurred more than 2 months later on June 27. The hospital could not have intended to mislead Mandy by filing an answer to an unrelated action when Atley had not yet suffered his alleged injuries. Accordingly, we find the district court did not abuse its discretion in declining to apply the doctrine of judicial estoppel.

In a separate but somewhat related argument, Mandy asserts that the previous judicial admission creates "a question of fact as to whom notice should be provided" that "should be resolved by" a finder of fact. Brief for appellant at 15-16. She claims that the prior judicial admissions imply that Annen, as the Secretary of the Board of Trustees for the hospital, is the actual official statutorily designated to receive notice of tort claims on behalf of the hospital under § 13-905.

However, Mandy has failed to properly assign this error in her brief. As indicated previously, Mandy's brief contains two assignments of error, neither of which claim that the district court erred in finding no genuine dispute of material fact. In order to be considered by an appellate court, an alleged error must be both specifically assigned and specifically argued in the brief of the party asserting the error. *Scalise v. Davis*, 312 Neb. 518, 980 N.W.2d 27 (2022). We therefore decline to address this argued but unassigned alleged error.

### 3. Applicability of § 25-213 to Atley's Claim

Mandy next argues that while the district court may have been correct in disposing of her individual claim, it nonetheless erred by dismissing Atley's claim with prejudice because the plain language of § 25-213 tolls the PSTCA's notice requirement during his minority. At the summary judgment hearing, Mandy stated § 25-213 gives Atley "another bite at the apple in reserving the proper party . . . because Nebraska statute and case law in this matter is clear in that [Atley is] allowed to reassert those claims, those claims are able to continue."

Section 25-213, titled "Tolling of statutes of limitation; when," reads, in pertinent part:

[I]f a person entitled to bring any action mentioned in . . . the [PSTCA] . . . is, at the time the cause of action accrued, within the age of twenty years, a person with a mental disorder, or imprisoned, every such person shall be entitled to bring such action within the respective times limited by Chapter 25 after such disability is removed.

- 11 -

Under this section, a person is within the age of 20 years until he or she becomes 21 years old. *Carruth v. State*, 271 Neb. 433, 712 N.W.2d 575 (2006), *disapproved on other grounds, Bogue v. Gillis*, 311 Neb. 445, 973 N.W.2d 338 (2022).

At the hearing on Mandy's motion to alter or amend, Mandy was "looking for clarification" on the district court's position on whether Atley's status as a minor would allow him to reassert his claim at a later date. The court pointed out that "the action that we have now" is "the mother on behalf of the minor." "That's the action I dismissed." It explained that it "didn't touch the issue" because "it would be an advisory type opinion on an action that's not before me." In its order denying the motion to alter or amend, the court stated it "intentionally did not address" § 25-213 in its summary judgment order "because it is inapplicable given the procedural posture of this case." It stated that "[a]ny opinion as to whether the statute of limitations tolled during Atley's minority would be advisory[.]" The court explained the parties could litigate the issue "if and when Atley files an action on his own behalf after reaching the age of majority."

On appeal, Mandy contends the district court incorrectly dismissed Atley's claim because § 25-213 "would preserve any claims" Atley has against the hospital and Lehl, "allowing him until the age of twenty-one to provide proper notice of such claims and file suit." Brief for appellant at 18. Mandy asserts that Atley was 15 years old when he was "harmed," and 17 years old when their action was filed in June 2024, and he was thus "still a minor" under § 25-213. Brief for appellant at 18. She concedes, "Even assuming arguendo that judicial estoppel does not apply and that notice was not properly provided within the one-year requirement," "only" Mandy's claims against the hospital and Lehl "are barred." *Id*. However, she contends the district court should not have dismissed Atley's claim with prejudice.

We agree with the district court that § 25-213 was not applicable to the case before it. As pled, Mandy brought Atley's claim on his behalf, and she did not file notice of her son's tort claim as prescribed in the PSTCA. Therefore, Mandy's claim individually and her claim on behalf of Atley were properly dismissed with prejudice.

We take no position on the question of whether § 25-213 permits Atley to refile his claim against the hospital and Lehl after the removal of his "disability" pursuant to that statute. As noted by the district court, such an opinion would be advisory and inappropriate to entertain at this juncture. See *State v. Castillo-Rodriguez*, 313 Neb. 763, 986 N.W.2d 78 (2023) (it is generally not the function of appellate courts to render advisory opinions). Therefore, the district court did not err in dismissing the claims before it with prejudice.

## VI. CONCLUSION

For the foregoing reasons, we affirm the district court's summary judgment order.

AFFIRMED.